**IN THE COURT OF APPEALS OF IOWA**

No. 20-0603
Filed June 17, 2020

**IN THE INTEREST OF C.F. and D.B.,**
**Minor Children,**

**M.B., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother appeals the termination of her parental rights to both children. **AFFIRMED**.

Ronald E. Langford of Langford Law Office, LLC, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Michael R. Sorci of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

After nearly nine years of periodic services by the Iowa Department of Human Services (DHS), the juvenile court terminated the parental rights of the mother of the children and the father of each of the children.[1]  Only the mother appeals.  She raises three issues: (1) whether termination is in the best interest of the children; (2) whether the juvenile court erred by admitting into evidence exhibits alleged to be untimely filed or, alternatively, not granting the mother's request for a continuance; and (3) whether the juvenile court abused its discretion by admitting into evidence exhibits that were deemed timely because the juvenile court held the record open.

We must first address whether the mother has waived the issues by her failure to adequately argue them in her filings with this court.  In her petition on appeal, with respect to each issue, the mother merely recited a legal conclusion, stated error was preserved, and cited two sections of the Iowa Code and three Iowa appellate cases.  The section of the petition setting forth the issues does not cite the record, set forth an argument, or give any explanation of how the cited authorities apply to this case.  By merely making conclusory statements without references to the record or how the cited authorities apply to the case, the mother may be deemed to have waived the issues.  *See* Iowa R. App. P. 6.201(1)(d) ("The petition on appeal shall substantially comply with form 5 in rule 6.1401."); Iowa R. App. P. 6.1401–Form 5 ("[S]tate what findings of fact or conclusions of law the district court made with which you disagree and why, generally referencing a

---

[1] The children are C.F., born in 2011, and D.B., born in 2007.

particular part of the record, witnesses' testimony, or exhibits that support your position on appeal. . . . *General conclusions, such as 'the trial court's ruling is not supported by law or the facts' are not acceptable.*" (emphasis added)); *see also In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."); *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments."); *Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume."); *cf.* Iowa R. App. P. 6.903(2)(g)(3) (requiring arguments in briefs to contain reasoning, citations to authorities, and references to pertinent parts of the record). We acknowledge the expedited nature of appeals in termination-of-parental-rights cases, *see generally* Iowa R. App. P. 6.201, but the mother must give us something with which to work in conducting our review.

In this case, it is a close call whether the mother has given us adequate information and argument with respect to the first issue. Due to the fact the recital of the material facts in her petition gives us some indication of the nature of her argument on the best-interest-of-the-children issue, we will overlook the waiver problem and address that issue on its merits. However, with respect to the second and third issues, after reviewing the mother's petition, we are unable to determine the nature of the claimed errors, as the mother does not identify the exhibits at issue, does not identify where the exhibits are addressed in the record, makes no argument as to why they should not have been admitted, makes no argument as

to how the mother was prejudiced by their admission, makes no argument about why a continuance was needed, makes no argument as to how she was prejudiced by a failure to grant a continuance, and makes no argument how the juvenile court abused its discretion in admitting the exhibits or denying a request for a continuance. Therefore, we deem the mother to have waived any claimed error with respect to the admission of any exhibits or the denial of the mother's continuance request and will not address those issues any further.

As to the best-interest-of-the-children argument, we start with the standard of review. "We review proceedings terminating parental rights de novo." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *A.M.*, 843 N.W.2d at 110).

Before turning to the merits, we note the mother raised no issue claiming the State failed to meet its burden of establishing the statutory grounds for termination or that any permissive factors set forth in Iowa Code section 232.116(3) (2019) should prevent termination. Therefore, we will not address those two steps in the three-step analysis. *See In re D.W.*, 791 N.W.2d 703, 706–07 (Iowa 2010) (noting termination-of-parental-rights proceedings follow a three-step analysis to determine (1) whether statutory grounds for termination have been established, (2) whether termination is in the children's best interest, and (3) whether a statutory exception in Iowa Code section 232.116(3) should preclude termination); *Hyler*, 548 N.W.2d at 870 ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.").

Turning to the merits, after our de novo review of the record, we agree termination of the mother's parental rights is in the best interest of the children. We find the following summary provided by the juvenile court to be accurate:

> The issue in this case is if the Court should terminate the mother's parental rights, after 9 years of DHS services and numerous treatments. Within the last two weeks, the mother finally understood she is an alcoholic and cannot drink at all. Due to the mother's alcoholism, the children have been exposed to her erratic intoxicated conduct, violence from her boyfriend, and unsanitary living conditions resulting in bugs and rodents. Even after the most recent removal, the mother was intoxicated when she visited the children.

The mother is correct in pointing out that, before the current child-in-need-of-assistance proceedings that led to termination, prior DHS involvement during the nine-year-span was sporadic and short-lived. However, the fact remains that the mother has had those nine years to address her alcoholism. She has failed to do so. Showing up at the termination hearing after those nine years and claiming to have finally realized she is an alcoholic does not preclude termination. First, the mother has a history of complying with demands for sobriety for short periods of time, only to return to drinking. Therefore, we are not convinced her current profession of dedication to sobriety will take root. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (quoting *C.B.*, 611 N.W.2d at 495)).

Second, these children have already had to wait too long to have a reliable parent. They finally have reliable parents in the form of their foster parents, who intend to adopt if permitted. *See In re J.B.L.*, 844 N.W.2d 703, 706 (Iowa Ct. App.

2014) (noting Iowa Code section 232.116(2)(b) provides that, in determining a child's best interest, the court may consider a child's integration into a foster home and the foster family's willingness to permanently integrate the child into the foster family). They should not have to wait any longer to see if the mother will finally successfully address her alcoholism and adequately parent them. *See A.M.*, 843 N.W.2d at 112 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (quoting *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010))).

The mother points out that a significant amount of evidence was presented about the cleanliness of her house. While this is true, it does not help the mother's argument. The juvenile court made the following observation:

> This case is not about clutter. [The mother] is unable to keep the house sanitary and free from rodents/bugs because of the alcoholism. The filth of the house is an indicia of [the mother's] alcoholism—along with other behavioral indicators which demonstrate her inability to provide for the children's most basic safety needs.

We view this observation as an acknowledgment that the lack of cleanliness of the house by itself would not necessarily have led to removal and eventual termination. We agree with the juvenile court's observation and acknowledgment. Like the juvenile court, we view the unclean house as a symptom of the mother's alcoholism that contributes to the overall concern that prevents return of the children. This concern also undermines the mother's argument that there must not be any concerns about the condition of the house because supervised visits took place there. There is a vast difference between supervised visits and returning the

children to the mother's care. The fact that conditions of the home are good enough to permit supervised visits to take place there in no way signifies the home is safe enough for the children to live there, just as the fact that the mother's behavior being good enough to permit supervised visits with her in no way signifies her behavior is good enough to allow the children to live with her.

Finally, we address the mother's claim that she has generally been compliant with services and the picture painted of her is an unfair characterization. After our review of the record, we disagree. The mother skipped visits, lied to service providers about reasons for skipping visits, refused to allow service providers to enter her home, blocked access to the bedroom where she is known to stash alcohol, and was intoxicated during visits. Her repeated abuse of alcohol has not only led to an unsanitary house, fighting with her boyfriend, and sporadic parenting, but it has also damaged her relationship with the children. D.B. refused to attend visits because of the mother's drinking, became upset during visits because of the mother's drinking, and unfairly assumed a parenting role at a young age because of the mother's drinking. He has also reported being uncomfortable and embarrassed by the mother's drinking. C.F. has been observed to act out toward others when a visit with the mother is about to occur and has generally grown indifferent to attending visits. The picture painted of the mother by the juvenile court is an accurate one.

For the foregoing reasons, we find termination of the mother's parental rights to be in the children's best interest.

**AFFIRMED**.